IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ST. CLARE ROSENBERG, WAYNE ANDERSON, CHARLES WASHINGTON, and EDWARD ANDERSON, Individually and on behalf of a class of all other persons similarly situated, | ) ) ) ) ) ) | |
| | ) | 05 Civ. 9131 (PAC) |
| Plaintiffs, | ) ) ) | |
| v. | ) | District Judge: Honorable Paul A. Crotty |
| | ) ) | |
| IKON OFFICE SOLUTIONS, INC., | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT AND RELATED RELIEF

New York, New York
January 17, 2008

Of Counsel:

David W. Sanford
Jeremy Heisler
Steven L. Wittels

SANFORD WITTELS & HEISLER, LLP
930 Third Ave., 10th Floor
New York, NY 10022
(646) 723-2947

SANFORD WITTELS & HEISLER, LLP
1666 Connecticut Ave, N.W., Suite 310
Washington, D.C., 20009
(202) 742-7780

Attorneys for plaintiffs and the class

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND.................................................................................... 3

    A.    Basic Allegation of the Suit ................................................................... 3

    B.    The Parties Begin to Discuss Settlement .............................................. 3

    C.    The Road to Settlement – IKON Provides Detailed Employment Data
        to Plaintiffs............................................................................................ 4

    D.    The Parties Mediate the Lawsuit .......................................................... 4

    E.    A Summary of the Expert Reports Exchanged by Plaintiffs and IKON ............ 4

        i. Plaintiffs' and Defendant's Experts................................................... 4

    F.    Post-Mediation Activity and Settlement............................................... 5

    G.    Synopsis of the Settlement Terms ........................................................ 6

    H.    The Class Responds Positively to the Settlement – There Are No Objections.... 6

ARGUMENT............................................................................................................ 7

I.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE,
      AND SHOULD BE APPROVED IN ALL RESPECTS.......................................... 7

    A.    THE LAW FAVORS CLASS ACTION SETTLEMENTS ................................ 7

    B.    THE SECOND CIRCUIT'S STANDARD FOR APPROVAL OF CLASS
        ACTION SETTLEMENTS UNDER RULE 23(E)........................................... 8

        1.       Substantive Fairness........................................................... 9

        2.       Procedural Fairness.......................................................... 10

    C.    UNDER THE SECOND CIRCUIT'S TEST FOR EVALUATING CLASS
        ACTION SETTLEMENTS, THE SUBSTANTIVE TERMS OF THE
        SETTLEMENT IN THIS CASE ARE FAIR, REASONABLE, AND
        ADEQUATE.......................................................................................... 10

        1.       The Complexity, Expense, and likely Duration of this Litigation Favor
            Final Approval .................................................................. 11

2.      The Reaction of the Class to the Settlement Favors Final Approval ..... 11

3.      The Stage of the Proceedings and the Amount of Discovery Completed
        Favor Final Approval ........................................................................ 12

4, 5, 6.  Risks of Class Prevailing – Establishing Liability, Damages, and
          Maintaining the Class Action Through Trial – Favor Final Approval .. 13

8, 9.   The Settlement Fund is Clearly Reasonable in Light of the Best Possible
        Recovery and All Attendant Risks of Litigation ................................... 14

D.   THE SETTLEMENT PROCEDURALLY FAIR BECAUSE IT IS A
     PRODUCT   OF   ARM'S   LENGTH   NEGOTIATIONS   AMONG
     EXPERIENCED COUNSEL, REACHED AFTER A HARD-FOUGHT
     MEDIATION, AS WELL AS CONFLICTING STATISTICAL ANALYSES
     BY PLAINTIFFS' AND DEFENDANT'S EXPERTS.................................... 11

     1.      Experienced Counsel Represented Both Parties in This Case.............. 16

     2.      The Proposed Settlement Was Negotiated by Experienced Counsel After
             a One-Day, In-Person Mediation Before a Mediator With Significant
             Experience in Class Action Settlements............................................... 17

II.  PLAINTIFFS' APPLICATION FOR $399,983.81 IN ATTORNEYS' FEES AND
     $36,516.19 IN EXPENSES SHOULD BE APPROVED....................................... 17

A.   THE APPLICATION .................................................................................. 17

B.   THE RELEVANT FACTORS ....................................................................... 18

C.   A REVIEW OF THE RELEVANT FACTORS SUPPORTS COUNSEL'S
     APPLICATION FOR AN AWARD OF THE ATTORNEYS' FEES
     SOUGHT ..................................................................................................... 19

     1.      The Litigation Has Conferred Substantial Benefits on the Class as a
             Consequence of Counsel's Efforts........................................................ 19

     2.      The Efforts of Plaintiffs' Counsel........................................................ 19

D.   THE PERCENTAGE OF RECOVERY AND LODESTAR APPROACHES IN
     EVALUATING CLASS ACTION ATTORNEY FEES................................... 19

     1.      The $399,983.81 Attorneys' Fee Request Represents Approximately
             31% of the Available $1,275,000 Settlement Benefit and Is Well Within
             the Range of Reasonableness ............................................................... 20

      2.      Analysis under the Lodestar School ..................................................... 21

      3.      The Court Should Grant Plaintiffs' Incentive Awards.......................... 23

III.  APPROPRIATE AND ADEQUATE NOTICE OF THE SETTLEMENT HAS BEEN PROVIDED TO THE CLASS.................................................................... 23

IV.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED ..................................................................................................... 23

CONCLUSION............................................................................................................. 24

## TABLE OF AUTHORITIES

### Federal Cases

Armstrong v. Whirlpool Corporation, 2007 U.S. Dist. LEXIS 14635
(M.D. Tenn. 2007) .................................................................................................. 14

Baron v. Commercial & Industrial Bank of Memphis, [1979-1980 Transfer Binder] Fed.
Sec. L. Rep. (CCH) ¶ 97,132 (S.D.N.Y. 1979)....................................................... 21

Beech Cinema Inc. v. Twentieth Century Fox Film Corp., 480 F. Supp. 1195 (S.D.N.Y.
1979) (awarding fees of 53.2% of common fund), aff'd, 62 F.2d 1106
(2nd Cir. 1980)...................................................................................................... 21

Behrens v. Wometco Enterprises, 118 F.R.D. 534, 542 (S.D. Fla. 1988), aff'd, 899 F.2d
21 (11th Cir. 1990)................................................................................................ 15

Cagan v. Anchor Savings Bank FSB, 1990 WL 73423 (E.D.N.Y. May 22, 1990).......... 15

Chatelain v. Prudential-Bache Properties, Inc., 805 F. Supp 209, 212
(S.D.N.Y. 1992) ..........................................................................................9, 16, 17

Churchill Vill. v. G.E., 361 F.3d 566, 575 (9th Cir. 2004), cert. denied, 125 S. Ct. 556
(2004) ................................................................................................................... 23

City of Detroit v. Grinnell Corp., 495 F.2d 448, 462-3
(2d Cir.1974)........................................................................9, 10, 11, 14, 15, 18, 22

Cohen v. Apache Corp., 1993 U.S. Dist. LEXIS 5211 (S.D.N.Y. 1993) ....................... 21

D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) ......................................... 10

Frank v. Eastman Kodak Co., 228 F.R.D. 174, 185 (W.D.N.Y. 2005) .................... 12, 14

Grant v. Bethlehem Steel Corp., 823 F.2d 20, 22 (2d Cir. 1985)...................................... 8

In re Allstar Securities Litig., 1991 U.S. Dist. LEXIS 20402 (S.D.N.Y. 1991).............. 21

In re ATI Technologies, Inc. Securities Litigation, 2003 U.S. Dist. LEXIS 7062, p.*10
(E.D. Pa., Apr. 28, 2003)....................................................................................... 20

In re Computron Software, Inc., Securities Litigation, 6 F. Supp.2d 313, 321-322 (D.N.J.
1998)..................................................................................................................... 19

In re Crazy Eddie Securities Litig., 824 F. Supp. 320, 324 (E.D.N.Y. 1993)............ 15, 21

In Re Domestic Air Transportation Antitrust Litig., 148 F.R.D. 297, 325
(N.D. Ga. 1993).................................................................................................... 14

In re Ira Haupt & Co., 304 F.Supp. 917, 934 (S.D.N.Y.1969)...................................... 13

In re Lloyd's American Trust Fund Litigation, 2002 U.S. Dist. LEXIS 22663, p.*76
(S.D.N.Y. 2007) ................................................................................................... 20

In re Medical X-Ray Film Antitrust Litig., 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y.
August 7, 1998)..................................................................................................... 21

In Re Michael Milken & Associates Securities Litig., 150 F.R.D. 46, 64-65 (S.D.N.Y.
1993)............................................................................................................... 11, 15

In re Michael Milken and Associates Securities Litig., 150 F.R.D. 57, 65
(S.D.N.Y. 1993)...................................................................................................... 8

In re NTL Inc. Securities Litigation, 2007 U.S. Dist. LEXIS 13661,
2007 WL 1294377................................................................................................. 22

In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y.1997)........... 13, 16

In re Prudential Inc. Securities Lip. Lit., 1995 WL 798907 (S.D.N.Y. 1995) ................. 15

In re R.J.R. Nabisco, Inc. Securities Litig., [1992 Transfer Binder] Fed. Sec. L. Rep.
(CCH) ¶ 96,984 at p.94, 269 (S.D.N.Y. 1992) ........................................................ 21
In re Sunrise Security Litig., 131 F.R.D. 450, 457 n.13 (E.D. Pa. 1990) ........................ 15
In re Tampico Fiber Antitrust Litig., 1995 U.S. Dist. LEXIS 478 (E.D. Pa. 1995) ......... 21
In re Twin Lab Corporation Securities Litigation, 187 F. Supp. 2d 80, 83 (E.D.N.Y.
2002)............................................................................................................................ 8
In re Union Carbide Corporation. Consumer Products Business. Securities Litigation, 718
F. Supp. 1099, 1103 (S.D.N.Y. 1989)...................................................... 7, 8, 9, 15, 22
In re United States Oil & Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992)....................... 11
In re Veeco Instruments Inc. Securities Litigation, 2007 U.S. Dist. LEXIS 85554, p.*28-
30 ("S.D.N.Y., November 7, 2007)................................................................... 20, 22
In re Warner Comm. Sec. Litig., 618 F. Supp. 735, 748 (S.D.N.Y. 1985), aff'd, 798 F.2d
35 (2nd Cir. 1986)................................................................................................ 10, 22
In re Warner Commc'ns Sec. Litig., 798 F.2d 35, 37 (2d Cir.1986)................................ 11
Joel A. v. Giuliani, 218 F. 3d 132, 136 ............................................................................ 8
Kolar v. Rite Aid Corporation, 2003 U.S. Dist. LEXIS 3646, p.*10 (E.D. Pa. Mar. 11,
2003)........................................................................................................................... 12
Malchman v. Davis, 706 F.2d 426, 433 (2d Cir.1983) ................................................. 8-9, 10
Masters v. Wilhemina Model Agency, Inc., 473 F. 3d 423, 437 (2d Circ. 2007) ............ 20
Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995)............. 8
Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (S.D.N.Y. 1968)....... 15
Officers for Justice v. Civil Serv. Comm'n., 688 F.2d 615, 629 (9th Cir. 1982)............. 11
Paul, Johnson, Laston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989) ................ 20
Rabin v. Concord Assets Group, Inc., [1991—1992 Transfer Binder] Sec. L. Rep (CCH)
paragraph 96,471 at p.92, 081 (S.D.N.Y. Dec. 19, 1991) ......................................... 20
Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C., 2006 WL 3681138
(E.D.N.Y.,2006)......................................................................................................... 13
Riverside v. Rivera, 477 U.S. 561 (1986) ....................................................................... 21
RMED International, Inc. v. Sloan's Supermarkets, Inc., 2003 U.S. Dist. LEXIS 8239,
p.*4 (S.D.N.Y., May 15, 2003, Leisure, J.)....................................................... 12, 21
Ross v. A.H. Robbins, 700 F. Supp. 682, 684 (S.D.N.Y. 1988) ..................................... 12
Ruskay v. Waddell, 552 F.2d 392, 398 (2d Cir. 1977), cert. denied,
434 U.S. 911 (1977) .................................................................................................... 8
San Francisco NAACP v. San Francisco Unified Sch. Dist., 576 F. Supp. 34, 47 (N.D.
Cal. 1983) .................................................................................................................. 11
Taft v. Ackermans, 2007 U.S. Dist. LEXIS 9144, p. *14 (S.D.N.Y. 2007) .............8, 9, 10
Thompson v. Metropolitan Life Insurance Co., 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ........ 8
Wales, et al v. Jack M. Berry, Inc., et al., 192 F. Supp. 2d 1313, 1328
(M.D. Fla. 2001) ......................................................................................................... 21
Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005)..........8, 10, 23
Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982) ..................................8, 9, 10, 16

## State Rules

Federal Rule of Civil Procedure 23(e)                                    3, 5, 6, 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ST. CLARE ROSENBERG, WAYNE ANDERSON, CHARLES WASHINGTON, and EDWARD ANDERSON, Individually and on behalf of a class of all other persons similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 05-CV-9131 (PAC) |
| v. | ) ) | District Judge: Honorable Paul A. Crotty |
| IKON OFFICE SOLUTIONS, INC., | ) ) ) | |
| Defendant. | ) | |

## PRELIMINARY STATEMENT

After more than three years of investigation, litigation, comprehensive analyses of conflicting statistical data, intense negotiations and a full day of mediation, this race-discrimination class action is ready for final court approval. Plaintiffs and Defendant IKON Office Solutions, Inc. ("IKON") have agreed to settle the matter by establishing a settlement fund of $1,275,000. Critically, not one member of the nearly 700-strong class has objected, and only one class member has opted-out. All class members who submitted claims forms will receive payments under the Settlement Agreement.

Plaintiffs St. Clare Rosenberg, Wayne Anderson, Charles Washington, and Edward Anderson submit this Memorandum of Law in support of their Motion, made under Federal Rule of Civil Procedure 23(e), for an order:

(1)   approving as fair and adequate the class-wide settlement of this action;

(2)   certifying as final the settlement class described below;

1

(3)    approving Plaintiffs' counsel's application for $399,983.91 in attorneys' fees and $36,516.19 in expenses;

(4)    awarding the representative plaintiffs "service payments" in the following amounts:

St. Clare Rosenberg –        $60,000
Wayne Anderson –             $40,000
Charles Washington –         $30,000
Edward Anderson –            $45,000; and

(5)    dismissing the action with prejudice.

On October 29, 2007, this court signed the "Preliminary Approval Order" and certified the following class for purposes of implementing the Settlement:

All African-American individuals employed by IKON Office Solutions, Inc. between January 1, 2001 and December 1, 2005, in the Legal Documents Services ("LDS") or IKON Management Services ("IMS") business units in New York State.

In the above order, the court:  (a) preliminarily approved the settlement of this class action as fair, reasonable, and adequate; (b) appointed Sanford Wittels & Heisler, LLP as settlement class counsel; (c) directed mail notice be served on class members; and (d) set January 22, 2008, 2:45 p.m. as the date and time on when the court will determine whether to approve:  (1) the settlement, (2) class counsel's application for  attorneys' fees and expenses, (3) the service payments to the class representatives, and additionally, whether a judgment and order of dismissal with prejudice should be entered.

As Plaintiffs demonstrate below and in the Joint Declaration of Plaintiffs' Co-Counsel, David W. Sanford and Jeremy Heisler, the settlement is fair and adequate and should be approved in all respects.

2

## FACTUAL BACKGROUND

### A.    Basic Allegations of the Suit

The four named plaintiffs sue on behalf of themselves and a class of African-American individuals who were employed in IKON's LDS or IMS business units in New York State. Plaintiffs allege that (i) IKON discriminated against them and the African-American class on the basis of race with respect to pay and promotions, (ii) subjected Plaintiffs and the class to a racially hostile work environment, and (iii) retaliated against the representative plaintiffs, as well as the class, after they complained about racial discrimination at IKON. (Sanford-Heisler Dec., ¶¶ 6-12; see also First Amended Complaint).

In December 2004, Plaintiff St. Clare Rosenberg filed with the EEOC an individual and class discrimination charge against IKON. In July 2005, the EEOC issued Mr. Rosenberg a Notice of Right to Sue, finding that the evidence supported "reasonable cause to believe" that Mr. Rosenberg and other African-American employees at IKON were discriminated against on the basis of their race and color.

Following this issuance of a "right to sue" letter, Plaintiffs St. Clare Rosenberg and Wayne Anderson filed an original complaint in November 2005. Plaintiffs filed an amended complaint in August 2006, and added Charles Washington and Edward Anderson as the third and fourth Plaintiffs.

### B.    The Parties Begin to Discuss Settlement

In January 2006, counsel for both sides met to explore ways to structure a settlement of the case. (Id., ¶¶ 21-23) Throughout the following months, the Parties engaged in preliminary negotiations and discussions. Eventually the Parties agreed that:

3

a) IKON would supply statistical data to Plaintiffs and b) the case would be mediated in Philadelphia, Pennsylvania, before Hunter Hughes, Esq., a noted professional mediator in employment discrimination suits and a partner of Rogers and Hardin in Atlanta, Georgia. (Id., ¶¶ 26-27)  The Parties agreed to split Mr. Hughes' fees and costs.

### C.    The Road to Settlement – IKON Provides Detailed Employment Data to Plaintiffs

In late October, 2006, IKON provided Plaintiffs' attorneys with detailed statistical data comparing salaries and promotional histories of African-American employees and other racial/ethnic groups working at the defendant company.  (Id., ¶¶ 24)

Armed with this data, Plaintiffs retained the services of two noted statistical experts, Dr. Louis Lanier of Nathan & Associates and Dr. Rebecca Klemm of Klemm & Associates (both located in Washington, D.C.), to analyze the data proffered and opine on IKON's potential liability and the range of damages.  (Id., ¶¶ 25).  IKON also engaged its own statistical expert to conduct a comprehensive data analysis.

### D.    The Parties Mediate the Lawsuit

In March 2007, the Parties held a full-day mediation in Philadelphia before Mr. Hughes.  As part of the mediation process, the Parties submitted detailed mediation statements to Mr. Hughes, and also exchanged detailed expert reports.

### E.    A Summary of the Expert Reports Exchanged by Plaintiffs and IKON

#### i.  Plaintiffs' and Defendant's Experts

Dr. Lanier performed two analyses, both of which used OLS regressions to estimate the relationships between annual salary and various explanatory variables, including race, tenure, and location.  (Id., ¶ 28.)

Under his most realistic damage estimate, Dr. Lanier concluded that IKON faced a maximum potential liability of $3.7 million. Accordingly, the $1.275 million settlement fund here constitutes 34.5 percent of Dr. Lanier's estimated liability of $3.7 million. (Id., ¶¶ 28.)

In arriving at the settlement, class counsel also had the benefit of Defendant's expert report which also analyzed the relevant data and opined on IKON's ultimate liability. Dr. Bernard R. Siskin concluded that:

> In summary, class counsel has presented no credible statistical evidence of race-based pay rate differentials, and we are unable to locate such using a small number of relevant variables and applying mainstream (court-accepted) statistical techniques. (Report of Bernard R. Siskin, p.7)

### F.   Post-Mediation Activity and Settlement

At the one-day, in-person mediation, the Parties narrowed their differences substantially. Extensive negotiations via telephone, facilitated by Mediator Hughes, followed. Mr. Hughes assisted and guided the Parties with respect to the construction of the settlement and the overall settlement approach.

Arms-length negotiations regarding the terms of the settlement continued for several months, and the Parties agreed upon and signed a Settlement Agreement on July 26, 2007. (Id., ¶¶ 29).

### G.   Synopsis of the Settlement Terms

The Parties have agreed to establish a settlement fund of approximately $1,275,000. (Id., ¶¶ 30). All members of the class who properly filled out claim forms will be paid at least $500 in monetary benefits. Class members employed at IKON for more than 12 months will receive the minimum amount of $500 and, additionally, $33.01

5

per month, multiplied by the number of months in excess of 12 they worked at IKON. Thus, a class member whose tenure at IKON lasted the entire five-year (60-month) class period of January 1, 2001 through December 31, 2005, will receive $2,084.48 in cash payments (the $500 minimum, plus $33.01 multiplied by 48, the number of months exceeding 12, during which the class member worked at IKON).

The settlement, as revised, also affords the four named plaintiffs a total $175,000 in service payments.[1]    As explained in detail in prior briefing on the propriety of the service payments, the service payments are fully justified. (See Docket Document No. 21). The four named plaintiffs believe they have suffered serious economic, emotional, and familial consequences because they had the courage to stand up and complain about allegedly discriminatory practices. Importantly, no class member has objected to the settlement or service payments. (See p. 7, infra)

**H.    The Class Responds Positively to the Settlement – There Are No Objections**

To effectuate the settlement, the Claims Administrator mailed 717 notice packets with claim forms to class members, of which only 27 claim forms returned as undeliverable. These forms were returned despite the efforts of the Claims Administrator to obtain a valid address using public and proprietary electronic resources, which collect their data from utility records, property tax records, credit records, and other sources. 225 class members filled out claim forms. **There were no objectors and only <u>one</u> request for exclusion.** (Sanford-Heisler Dec., ¶¶ 32-33)

The lack of objections illustrates that the class is satisfied with the settlement and supplies a powerful reason for this Court to approve the settlement as fair and adequate.

---

1 After this Court expressed concern about the amount of the service payments, the class plaintiffs agreed to reduce by $55,000 the sum they are requesting as service payments.

(See pp. 11-12, infra)

Under governing law, which strongly favors class action settlements, this court should certify the class as final, approve the settlement, and award Plaintiffs' counsel the requested sum of $399,983.81 as attorneys' fees and $36,516.19in expenses.   The fee sought is reasonable and fits in well with customary awards for complex class actions like the one at bar.

Finally, for the reasons provided in Plaintiffs' previous briefing, the court should also award Plaintiffs the amount of service payments requested on this motion.  As mentioned, class members have submitted no objections to the settlement, including the provisions for service payment award to the four named plaintiffs.  In the Class Notice sent to class members, the exact dollar figures of the service payment terms were fully and prominently disclosed in the Class Notice under the heading "**F.  Service Payments to Class Representatives**."

Importantly, the fact that not a single class member protested against the service payments suggests that the class as a whole considers those payments justified.

## ARGUMENT

### POINT I

#### THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED IN ALL RESPECTS.

##### A.    THE LAW FAVORS CLASS ACTION SETTLEMENTS.

In In re Union Carbide Corporation. Consumer Products Business. Securities Litigation, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989), the district court reaffirmed the well-established judicial policy which favors settlement of class actions:

7

> In evaluating the settlement of complex class actions, the courts have long recognized that such litigation is notably difficult and notoriously uncertain . . . and that compromise is particularly appropriate. **The law favors settlements by the parties rather than by court disposition. . . .** (internal citations omitted) In re Union Carbide Corporation, 718 F. Supp. at 1103.

See also: Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005) (Noting the "strong judicial policy in favor of settlements particularly in the class action context."); Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982); Thompson v. Metropolitan Life Insurance Co., 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("Judicial discretion should be exercised in light of the general policy favoring settlement."); Taft v. Ackermans, 2007 U.S. Dist. LEXIS 9144, p. *14 (S.D.N.Y. 2007).[2]

**B.    THE SECOND CIRCUIT'S STANDARD FOR APPROVAL OF CLASS ACTION SETTLEMENTS UNDER RULE 23(e).**

In order to approve a settlement, a district court must determine whether the proposed settlement, "taken as a whole, is fair, reasonable, and adequate." See Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995); Joel A. v. Giuliani, 218 F. 3d 132, 136; (2d Cir. 2001); Grant v. Bethlehem Steel Corp., 823 F.2d 20, 22 (2d Cir. 1985). Courts in this circuit make that determination based upon "two types of evidence:" (1) substantive and (2) procedural. Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir.1982). Substantive evidence includes the "substantive terms of the settlement compared to the likely result of a trial." Malchman v. Davis, 706 F.2d 426,

---

[2]    Accord:    In re Twin Lab Corporation Securities Litigation, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) ("Judicial discretion should be exercised in light of the general policy favoring [class action] settlement."); Ruskay v. Waddell, 552 F.2d 392, 398 (2d Cir. 1977), cert. denied, 434 U.S. 911 (1977); In re Michael Milken and Associates Securities Litig., 150 F.R.D. 57, 65 (S.D.N.Y. 1993) ("Particularly in class actions, there is an overriding public interest in favor of settlement. It is common knowledge that class actions suits have a well deserved reputation as being most complex.").

433 (2d Cir.1983); Weinberger, 698 F.2d at 74 (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)). Procedural evidence includes whether the settlement is the product of arm's length negotiations between experienced counsel. Taft v. Ackermans, 2007 U.S. Dist. LEXIS 9144, p. **14-15 (S.D.N.Y. 2007); Chatelain v. Prudential-Bache Properties, Inc., 805 F. Supp 209, 212 (S.D.N.Y. 1992).

### 1.    Substantive Fairness

More than three decades ago, the U.S. Court of Appeals for the Second Circuit in City of Detroit v. Grinnell Corp., 495 F.2d 448, 462-3 (2d Cir.1974) ("Grinnell") set forth the analytical framework for evaluating the *substantive fairness* of a class action settlement. In determining whether to approve a proposed settlement, a district court should consider the following nine factors:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund in light of all attendant risks of litigation.

Case 1:05-cv-09131-PAC    Document 33    Filed 01/18/2008    Page 16 of 30


Grinnell., 495 F.2d at 462-3

### 2.    Procedural Fairness

After probing the substantive fairness of a proposed settlement, the district court examines "the negotiating process by which the settlement was reached." Weinberger, 698 F.2d at 74. This process focuses on "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." Malchman, 706 F.2d at 433 (citing Weinberger, 698 F.2d at 73). Courts have the duty to ensure that the settlement is not the product of collusion. In re Warner Commc'ns Sec. Litig., 798 F.2d 35, 37 (2d Cir.1986). Importantly, however, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, Inc., 396 F.3d at 116 (internal citation omitted). The Court should find the negotiating process was fair if "the settlement resulted from arm's-length negotiations and...plaintiff's counsel have...the experience and ability...to effective[ly] represent []...the class' interests." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001). Accord: Taft v. Ackermans, 2007 U.S. Dist. LEXIS 9144, p. *14 (S.D.N.Y. 2007).

### C.    UNDER THE SECOND CIRCUIT'S TEST FOR EVALUATING CLASS ACTION SETTLEMENTS, THE SUBSTANTIVE TERMS OF THE SETTLEMENT IN THIS CASE ARE FAIR, REASONABLE, AND ADEQUATE.

As stated above, Courts evaluate the substantive terms of a settlement based on the nine factors spelled out in City of Detroit v. Grinnell Corp., 495 F.2d 448, 462-3 (2d Cir.1974).

10

### 1. The Complexity, Expense and likely Duration of this Litigation Favor Final Approval.

The first factor – the complexity, expense and likely duration of this case – favors final approval of the Settlement. See City of Detroit v. Grinnell Corp., 495 F.2d 448, 462-3 (2d Cir.1974). It is well-settled that civil rights class actions are complex. San Francisco NAACP v. San Francisco Unified Sch. Dist., 576 F. Supp. 34, 47 (N.D. Cal. 1983) (the complexity and duration of trial would seriously diminish the value of whatever additional relief might be obtained by further litigation, when trial was expected to last between three and five months and the plaintiffs alone planned to call dozens of witnesses during the liability stage of the trial); see also Officers for Justice v. Civil Serv. Comm'n., 688 F.2d 615, 629 (9th Cir. 1982) ("[t]he track record for large class action employment discrimination cases demonstrates that many years may be consumed by trial(s) and appeal(s) before the dust finally settles").

Additionally, the costs and burden of further litigation are very strong factors supporting this Settlement. See In re Michael Milken & Associates Securities Litig., 151 F.D.R. 46, 48 (S.D.N.Y. 1993) ("Typically, the magnitude of damages becomes a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury."); In re United States Oil & Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992) ("Complex litigation... can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.").

### 2. The Reaction of the Class to the Settlement Favors Final Approval.

No class member has objected to the Settlement, and only one has requested exclusion. This favorable reception by the class constitutes "strong evidence" of the

fairness of the proposed settlement and supports judicial approval.   See RMED International, Inc. v. Sloan's Supermarkets, Inc., 2003 U.S. Dist. LEXIS 8239, p.*4 (S.D.N.Y., May 15, 2003, Leisure, J.) ("The lack of class member objections . . . may itself be taken as evidencing the fairness of a settlement," quoting A.H. Robbins, 700 F. Supp. 682, 684 (S.D.N.Y. 1988)); Kolar v. Rite Aid Corporation, 2003 U.S. Dist. LEXIS 3646, p.*10 (E.D. Pa. Mar. 11, 2003) (In approving a class action settlement, the court remarked **"we also take comfort from the fact that not one of the many thousands of class members has taken issue with the merits of this settlement, even after over 16,000 received first class mail notice about it.")**; Ross v. A.H. Robbins, Inc., 700 F. Supp. 682, 684 (S.D.N.Y. 1988) ("The lack of class member objections . . . may itself be taken as evidencing the fairness of a settlement").

### 3. The Stage of the Proceedings and the Amount of Discovery Completed Favor Final Approval

Courts consider the stage of the proceedings when evaluating a class action settlement. Frank v. Eastman Kodak Co., 228 F.R.D. 174, 185 (W.D.N.Y. 2005). Such evaluation not only ensures that class counsel understands the strengths and weaknesses of the class claims before compromising them, but also affords the court with an opportunity to "intelligently make...an appraisal of the Settlement." Id.

Here, Plaintiffs' counsel had the benefit of detailed and exhaustive employment data provided by IKON comparing salaries of African-American employees with those of whites and other racial ethnic groups during the class period.  Once Plaintiffs obtained these employment statistics, they retained two expert statisticians, Dr. Louis Lanier and Dr. Rebecca Klemm, to evaluate IKON's potential liability for pay and promotional discrimination against African-Americans.   Plaintiffs' counsel was thereby able to

intelligently evaluate the strengths and weaknesses of this case when they negotiated the settlement, as well as to evaluate Defendant's countervailing expert report. Furthermore, settlement was reached only after a full-day, in-person, session before one of the nation's premier mediators, Hunter Hughes, Esq., as well as detailed, follow-up negotiations via telephone, which also were facilitated by Mr. Hughes.

### 4, 5, 6. Risks of Class Prevailing – Establishing Liability, Damages and Maintaining the Class Action Through Trial – Favor Final Approval

Litigation inherently involves risks. See In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y.1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." In re Ira Haupt & Co., 304 F.Supp. 917, 934 (S.D.N.Y.1969). The risks involved in this litigation weigh heavily in favor of settlement.

On the merits, IKON's expert, Dr. Bernard R. Siskin concluded, based on his review of the statistical data, that IKON did not discriminate against the class. Plaintiffs' class certification was also potentially problematic.

The Parties stipulated to class certification for settlement purposes. If the class action were litigated, however, IKON likely would have opposed certification. Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C., 2006 WL 3681138 (E.D.N.Y.,2006) ("The parties stipulated to class certification for settlement purposes only. If the class action were litigated, however, it is likely that defendants would oppose certification ... Accordingly, this factor weighs in favor of approving the settlement.").

By no means was it a foregone conclusion that the proposed class would be certified by the Court. Class certification may be difficult to achieve in racial harassment

13

hostile-work-environment suits like the one at bar.    See Armstrong v. Whirlpool Corporation, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007).    See further, City of Detroit v. Grinnell Corp., 495 F.2d 448, 457 (2nd Cir. 1974) ("Finally, the record shows that if the proceedings had continued and had not been stopped short by the settlement offer, there would have been a serious question as to whether these actions could have been maintained as class actions at all.  In its approval of the settlement offer, the district court outlined some of the factors which militate against the use of the class action device.    The separate liability and damage issues present enormous difficulties.").  Accordingly, these factors also support approval of this Settlement.

### 8[3], 9.    The Settlement Fund Is Clearly Reasonable In Light of the Best Possible Recovery and All Attendant Risks of Litigation

Even absent the risk of establishing liability, the value of the settlement fund justifies settling this case.  Under the Settlement, those class members who did not opt out of the class or object to the Settlement will each receive an award, which is reasonable for the class to accept given the risk of establishing liability and damages in this case.  Based on the analysis of the Plaintiffs' statistical expert, the total settlement fund constitutes up to 34 percent of IKON's total possibility liability.  (See Sanford-Heisler Declaration).

Settlements can be approved even where the benefits to be obtained on behalf of the class are less than those originally sought.  "The settlement does not have to be a brilliant one to secure judicial approval.  The settlement may be approved if it is clear it secures some adequate advance for the class."   In Re Domestic Air Transportation Antitrust Litig., 148 F.R.D. 297, 325 (N.D. Ga. 1993).

---

[3]      The seventh factor, the ability of the Defendants to withstand judgment, is not a relevant factor here.

In fact, a settlement can be approved even when it amounts to only a small percentage of the recovery sought.  See In Re Union Carbide Corporation Consumer Products Business Securities Litigation, supra, at p.1103, where Judge Brieant remarked – "**The Court of Appeals has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought. . . .  The essence of settlement is compromise.**"  In Re Michael Milken & Associates Securities Litig., 150 F.R.D. 46, 64-65 (S.D.N.Y. 1993).  As the Second Circuit stated in City of Detroit v. Grinnell Corp., 495 F.2d 448, 455, n.2 (2nd Cir. 1974):  "**There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery.**"[4]

### D. THE SETTLEMENT PROCEDURALLY FAIR BECAUSE IT IS A PRODUCT OF ARM'S LENGTH NEGOTIATIONS AMONG EXPERIENCED COUNSEL, REACHED AFTER A HARD-FOUGHT MEDIATION, AS WELL AS CONFLICTING STATISTICAL ANALYSES BY PLAINTIFFS' AND DEFENDANT'S EXPERTS.

In evaluating the procedural fairness of a proposed settlement, the district court will consider whether the agreement was properly negotiated at arm's length by the parties.  "As long as the integrity of the negotiating process is ensured by the Court, it is

---

[4]    The courts have often approved or proposed settlements even where the benefits represent only "a fraction of the potential recovery," and far less than the significant percentage of maximum recovery Class Counsel have won for IKON class members here.  See In re Sunrise Security Litig., 131 F.R.D. 450, 457 n.13 (E.D. Pa. 1990).  For example, in In re Crazy Eddie Securities Litig., 824 F. Supp. 320, 324 (E.D.N.Y. 1993), a settlement was approved where class members were awarded between 6 cents and 10 cents for every $1.00 lost.  See also Cagan v. Anchor Savings Bank FSB, 1990 WL 73423 (E.D.N.Y. May 22, 1990) (approving $2.3 million dollar settlement that represented less than 2% of theoretical best possible recovery of $121,000,000); Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (S.D.N.Y. 1968) (court approved a 5-10% settlement); Behrens v. Wometco Enterprises, 118 F.R.D. 534, 542 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990) ("The mere fact that the proposed settlement of $.20 cents a share is a small fraction of $3.50 a share is not indicative of an inadequate compromise."); In re Prudential Inc. Securities Lip. Lit., 1995 WL 798907 (S.D.N.Y. 1995) (approving settlement of between 1.6% and 5% of claimed damages).

assumed that the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides." In re Painewebber Ltd. P'ships Litig., 171 F.R.D. at 132. This inquiry considers whether the settlement process has been corrupted and whether Class Counsel has adequately represented the class. See Weinberger, 698 F.2d at 74.

### 1.    Experienced Counsel Represented Both Parties in This Case.

Courts recognize that great weight is accorded to the recommendations of counsel, who are in the best position to evaluate the strengths and weaknesses of their cases. Chatelain v. Prudential-Bache Properties, Inc., 805 F.Supp 209, 212 (S.D.N.Y. 1992). Both parties were represented by experienced counsel with substantial experience in employment class action litigation.

Defense Counsel, the law firm of Morgan Lewis, is a nationally recognized firm whose reputation for zealous representation of its clients is well known.

Class Counsel, the law firm of Sanford Wittels & Heisler, LLP, is a plaintiffs' class action law firm known largely for its successful pursuit of civil rights cases, particularly in the Title VII arena. David W. Sanford of Sanford Wittels & Heisler, LLP is one of the nation's leading civil rights attorneys. He has served as lead counsel in approximately 50 class action matters, primarily in the civil rights field, around the United States and recovered many millions dollars for discrimination victims. (See Sanford-Heisler Dec.) Counsel's recommendation to approve the Settlement is well informed.

**2. The Proposed Settlement Was Negotiated by Experienced Counsel After a One-Day, In-Person Mediation Before a Mediator With Significant Experience in Class Action Settlements.**

The Settlement Agreement is the product of arm's length negotiations between Class Counsel and IKON. Chatelaine v. Prudential-Bache Sec. Inc., 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (A strong initial presumption of fairness attaches to a proposed settlement when it is shown to be the result of arms-length negotiating.) The protracted settlement discussions were conducted over many weeks and culminated with a mediated settlement negotiated with the assistance and guidance of an experienced mediator of employment class actions. During the settlement discussions, the Parties conducted a lengthy, face-to-face mediation, which was followed by length telephone conferences. In addition, prior to the one-day mediation, the Parties had exchanged countervailing expert reports, and had a preliminary meeting to initiate settlement discussions and IKON's production of statistical data to facilitate those discussions. In addition, the Parties have engaged in lengthy, arms-length negotiations regarding the preparation and drafting of the voluminous settlement documentation now on file with the Court. There is no evidence that the negotiations were collusive in any way. Accordingly, this factor favors approval of the Settlement.

**POINT II**

**PLAINTIFFS' APPLICATION FOR $399,983.81 IN ATTORNEYS' FEES AND $36,516.19 IN EXPENSES SHOULD BE APPROVED**

**A.    THE APPLICATION.**

The Settlement Agreement provided that, subject to Court approval, Plaintiffs' counsel and the class would receive a combined total of $436,500 in expenses and

attorneys' fees. Plaintiffs now apply for $399,983.81 in attorneys' fees and $36,516.19 in expenses.

The attorneys' fee request is actually less than Plaintiffs' counsel's "lodestar" – the hours expended on the case multiplied by hourly rates. Plaintiffs devoted more than 800 hours for a total lodestar of $400,276.25

As shown below, the attorneys' fee application is fair and reasonable and should be approved.

**B.    THE RELEVANT FACTORS.**

In determining an appropriate award of attorneys' fees for class actions, the courts have adopted the principles articulated by the Second Circuit in <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448 471 (2nd Cir. 1974). Under that approach:

> [T]he courts do not consider that a "just and adequate fee" can be ascertained by merely multiplying an attorney's hours by his typical hourly fees. The courts regard this calculation as "the only legitimate starting point for analysis." To this, "other, less objective factors" are applied to reach the ultimate award. The foremost of these factors is the attorney's "risk of litigation." ... the fact that despite the most vigorous and competent of efforts success is never guaranteed.

Other generally accepted factors as stated in <u>Grinnell</u> [at] 470 are:

1.    the standing of counsel at the bar – both counsel receiving award and opposing counsel,

2.    time and labor spent,

3.    magnitude and complexity of the litigation,

4.     responsibility undertaken,

5.    the amount recovered,

6.    what it would be reasonable for counsel to charge a victorious plaintiff.

C.    **A REVIEW OF THE RELEVANT FACTORS SUPPORTS
COUNSEL'S APPLICATION FOR AN AWARD OF THE
ATTORNEYS' FEES SOUGHT.**

1.    **The Litigation Has Conferred Substantial Benefits
on the Class as a Consequence of Counsel's Efforts**

As discussed above, the benefits of the settlement to Plaintiffs and the class are

substantial.

2.    **The Efforts of Plaintiffs' Counsel**

The prosecution of this action required a high level of experience and expertise in

complex class action litigation, as well as the ability to provide such service under

difficult circumstances against Defendant represented by the law firm of Morgan Lewis,

a nationally recognized firm whose reputation for zealous representation of its clients is

well known.  The extent and nature of the efforts of Plaintiffs' counsel are described in

detail by the Sanford-Heisler declaration.

D.    **THE PERCENTAGE OF RECOVERY AND LODESTAR
APPROACHES IN EVALUATING CLASS ACTION
ATTORNEY'S FEES.**

Under the "percentage-of-the-fund" approach, the court awards as attorneys' fees

a reasonable percentage of the fund created by class counsel's effort.[5]  The "lodestar"

method entails multiplying the number of hours the attorneys expended by the attorneys'

---

[5]    "Case law establishes two methods for evaluating the reasonableness of a request
for attorneys' fees -- the lodestar approach and the percentage-of-recovery approach. . . .  The
lodestar method . . . calculates fees by multiplying the number of hours by some hourly rate
to be determined to be suitable. . . .  The percentage-of-recovery method is used in common
fund cases on the theory that members of the class would be unjustly enriched if they did not
adequately compensate counsel responsible for generating the fund."  In re Computron
Software, Inc., Securities Litigation, 6 F. Supp.2d 313, 321-322 (D.N.J. 1998).

current hourly rates to create a "lodestar" figure; most often this "lodestar" figure is adjusted upward or "multiplied" by the court to compensate counsel for the contingent nature of the case, the quality of work performed, delay in payment and other factors. See Rabin v. Concord Assets Group, Inc., [1991—1992 Transfer Binder] Sec. L. Rep (CCH) paragraph 96,471 at p.92, 081 (S.D.N.Y. Dec. 19, 1991) ("in recent years multiplies of between 3 and 4.5 have been common"). Plaintiffs here are not requesting a multiplier.

Under either the "percentage-of-the-fund" analysis or the "lodestar" approach, the $399,983.81 fee **sought** herein is amply justified.

### 1. The $399,983.81 Attorneys' Fee Request Represents Approximately 31% of the Available $1,275,000 Settlement Benefit and Is Well Within the Range of Reasonableness.

Most federal court judges are departing from reliance on the "lodestar-multiplier" doctrine, and now use a "percentage" approach in common fund cases, either exclusively or at the discretion of the trial court. In re ATI Technologies, Inc. Securities Litigation, 2003 U.S. Dist. LEXIS 7062, p.*10 (E.D. Pa., Apr. 28, 2003) (approving percentage of recovery method for determining legal fee); Paul, Johnson, Laston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).[6]

Courts have established that approximately 33 percent is a standard fee in complex class action cases like this one where plaintiffs' counsel have achieved a good recovery for the class. See In re Lloyd's American Trust Fund Litigation, 2002 U.S. Dist. LEXIS 22663, p.*76 (S.D.N.Y. 2007) ("In this district alone, there are scores of...cases where fees...were awarded in the range of 33 1/3 % of the settlement fund."); In re

---

[6] In Masters v. Wilhemina Model Agency, Inc., 473 F. 3d 423, 437 (2d Circ. 2007), the Second Circuit ruled that "An allocation of fees by percentage should therefore be awarded on the basis of total funds made available **whether claimed or not**."

Veeco Instruments Inc. Securities Litigation, 2007 U.S. Dist. LEXIS 85554, p. \*\*13-14 (S.D.N.Y. Nov. 7, 2007, McMahon, J.) ("Indeed, there are numerous…cases in this District alone where fees were awarded in the amount of 33 1/3% of the settlement fund…"); RMED International, Inc. v. Sloan's Supermarkets, Inc., 2003 U.S. Dist. LEXIS 8239, p.\*6 (S.D.N.Y., May 15, 2003, Leisure, J.); In re R.J.R. Nabisco, Inc. Securities Litig., [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,984 at p.94, 269 (S.D.N.Y. 1992);[7]

## 2. Analysis under the Lodestar School

As set forth in the Sanford-Heisler declaration, class counsel and staff devoted more than 850 hours to prosecute this litigation. The current hourly rates for Plaintiffs' counsel are $625 for Jeremy Heisler, Esq., $600 for Steven L. Wittels, Esq., and $525 for David Sanford. (See Sanford-Heisler Dec ¶¶ 39)

The straight "lodestar value" of Plaintiffs' counsel's services on this case comes to $400,276.25, which is less than the attorneys' fee of $399,983.81 that Plaintiffs seek here. (Sanford-Heisler Dec., ¶¶ 36).

---

[7] See also Beech Cinema Inc. v. Twentieth Century Fox Film Corp., 480 F. Supp. 1195 (S.D.N.Y. 1979) (awarding fees of 53.2% of common fund), aff'd, 62 F.2d 1106 (2nd Cir. 1980); Green v. Emerson Ltd., [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. 1987) (46.2%); Baron v. Commercial & Industrial Bank of Memphis, [1979-1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,132 (S.D.N.Y. 1979); In re Allstar Securities Litig., 1991 U.S. Dist. LEXIS 20402 (S.D.N.Y. 1991) (35%); In re Crazy Eddie Securities Litig., 824 F. Supp. 320, 325-326 (S.D.N.Y. 1993) (34%); In re Tampico Fiber Antitrust Litig., 1995 U.S. Dist. LEXIS 478 (E.D. Pa. 1995) (30%); In re Medical X-Ray Film Antitrust Litig., 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. August 7, 1998) (33.33% of fund); Cohen v. Apache Corp., 1993 U.S. Dist. LEXIS 5211 (S.D.N.Y. 1993) (33.33%).      Additionally, unlike the request for attorneys' fees in this case which, if granted, would represent 33% of the monetary relief, it is not uncommon for courts to grant attorneys' fees that exceed the actual monetary relief provided in the case. See Riverside v. Rivera, 477 U.S. 561 (1986) (Supreme Court approved attorneys' fee of $245,456.25 where plaintiffs' recovery on the civil rights claims was a mere $13,300.00). See also Wales, et al v. Jack M. Berry, Inc., et al., 192 F. Supp. 2d 1313, 1328 (M.D. Fla. 2001) (approving attorneys' fees and costs in the amount of $352,225.40 where plaintiffs recovered approximately $21,000.00 in a civil rights action). By contrast, in this case the requested fee is significantly less than the available monetary relief to the class

As Judge Colleen McMahon recently held in approving a fee award based on a current hourly rate similar to the ones involved in this fee application:

> The use of **current rates** to calculate the lodestar figure has been repeatedly endorsed by courts as a means of accounting for the delay in payment inherent in class actions and for inflation . . . . In determining the propriety of the hourly rates charged by plaintiffs' counsel in class actions, courts have held that the standard is the rate charged in the community where the services were performed by counsel. ... Thus, substantial precedent – as well as a market check – demonstrates that the rates utilized by Plaintiffs' Counsel in calculating its lodestar is are reasonable. See, e.g., **In re Indep. Energy Holdings PLC Sec. Litig., 2003 U.S. Dist. LEXIS 17090, at \*30 (S.D.N.Y. Sept. 26, 2003) (rates of $650/hour for a partner, and $300-$425/hour for associates), are "not extraordinary for a topflight New York City law firm")...**
>
> In re Veeco Instruments Inc. Securities Litigation, 2007 U.S. Dist. LEXIS 85554, p.\*28-30 ("S.D.N.Y., November 7, 2007),

See also In re NTL Inc. Securities Litigation, 2007 U.S. Dist. LEXIS 13661, 2007 WL 1294377 at \*8 (approving rates up to $695 for partners).

Counsel's hours against IKON were reasonably expended, and are properly the basis for the lodestar calculation. See In re Union Carbide Corp., 718 F. Supp. at 1109-10. As explained by the Second Circuit in Grinnell, "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services." 495 F.2d at 470-71.

Finally, the quality of the representation here weighs in favor of awarding the requested fee. Counsel is experienced and able in the field of complex class action and corporate litigation. (See Sanford-Heisler Dec., setting forth Plaintiffs' counsel's experience.) Moreover, the reputation and skill of opposing counsel may also be considered when determining an award of fees. See In re Warner Comm. Sec. Litig., 618

F. Supp. 735, 748 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2nd Cir. 1986). Defendant here was represented by Morgan Lewis, a highly skilled law firm, vigorously and competently defending its client.

### 3.    The Court Should Grant Plaintiffs' Incentive Awards

For the reasons Plaintiffs detailed in their prior briefing on this issue, the court should approve the four class representatives' scaled-down requests for service payments, particularly since no class member has objected to this part of the settlement.

### POINT III

### APPROPRIATE AND ADEQUATE NOTICE OF THE SETTLEMENT HAS BEEN PROVIDED TO THE CLASS.

The class notice in this case informed each class member of the terms of Settlement. Courts recognize that class notice is sufficient if it "may be understood by the average class member." Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 114 (2d Cir. 2005); see also Churchill Vill. v. G.E., 361 F.3d 566, 575 (9th Cir. 2004), cert. denied, 125 S. Ct. 556 (2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

### POINT IV

### CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED.

This Court should certify the class as final. The benefits of the proposed Settlement can be realized only through the final certification of a settlement class. This Court preliminarily certified the class in its Preliminary Approval Order. Final certification is now appropriate.

## CONCLUSION

For all of the reasons discussed above, the proposed class should be finally certified, and the settlement should be approved as final. Plaintiffs' application for attorneys' fees, expenses, and incentive awards to the class representatives should be granted in its entirety, and the form of final judgment submitted by the parties should be signed and entered.


Dated: January 17, 2008

Respectfully submitted,

S/ Jeremy Heisler
Jeremy Heisler, (JH-0145)
Steven L. Wittels, (SLW-8110)
**SANFORD WITTELS & HEISLER, LLP**
950 Third Avenue, 10th Floor
New York, NY 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

David Sanford, D.C. Bar No. 457933
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, NW, Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776

24